LAPADAT *v.* COPELAND.

1. VENDOR AND PURCHASER—PARTIES—CANCELLATION OF INSTRU-MENTS.

Suit for the cancellation of contracts for the purchase of land may not be maintained by one of two joint pur-chasers in the names of both, in the absence of a showing of any authority from the other purchaser to make him a party thereto.

2. SAME—INTOXICATION—EVIDENCE—SUFFICIENCY.

In a suit by the purchaser for the cancellation of con-tracts for the purchase of land on the ground that he was induced to enter into said contracts while intoxicated, evidence *held*, insufficient to warrant relief on the ground alleged, in view of the peculiar form of intoxication shown, which allowed plaintiff to remember with minuteness everything about the negotiations.

3. SAME—CONTRACT MAY NOT BE CANCELED BECAUSE POOR INVEST-MENT.

That the purchase of land on contract was a poor invest-

ment would not afford equity jurisdiction to cancel the same.

Appeal from Wayne; Smith (Guy M.), J., presiding. Submitted January 15, 1924. (Docket No. 66.) Decided March 5, 1924.

Bill by John Lapadat and another against George M. Copeland and another for the cancellation of certain land contracts. From a decree for plaintiffs, defendants appeal. Reversed, and bill dismissed.

*James I. Ellmann,* for plaintiffs.

*Race, Haass & Allen,* for defendants.

WIEST, J. Defendants appeal from a decree cancelling two land contracts given by them to plaintiffs, ordering them to pay $1,819.78 to the attorney for plaintiff Lapadat, and making the same a lien upon the property covered by the contracts. Plaintiff Lapadat claims that he and Petiu Getia, while intoxicated, were induced to enter into the two contracts to purchase several lots in a subdivision near Royal Oak, and make down payments thereon to the amount decreed to be returned. Shortly after the purchase Getia left the State. The bill was filed by Lapadat, who joined Getia as a party plaintiff, but no allegation is made of any authority from Getia to Lapadat to make him a party. Whether Getia knows anything about this suit is extremely doubtful, but that Lapadat had no right to bring suit in their joint behalf is manifest. Defendants cannot safely carry out the terms of the decree, for if they pay the sum ordered and receive back from Lapadat the contracts for cancellation there is nothing to prevent Getia from coming on and asserting his rights. The contracts run to Lapadat and Getia. Getia has not had his day in court. While it may be a short cut to say Getia may look to Lapadat for the money he invested,

if the same is paid under the decree to Lapadat, still he is not bound to do so. What right has Lapadat to receive money belonging to Getia? None whatever. The decree could give him no such right and to remit Getia to look to him for it. Suppose Lapadat goes away, must Getia be without remedy? How much money is due Getia? No one knows, except as Lapadat claims, and upon that question Getia's interests and Lapadat's are not in common. The decree, under the record, is a nullity as to Getia. If defendants are made to restore the money paid by Lapadat and Getia they should get themselves and the land released from the rights of Getia as well as Lapadat. We dismiss this feature of the case without further comment for the reason that upon the merits the bill must be dismissed.

Lapadat claims he was led into making the purchase while intoxicated. This is the sole ground alleged for setting the transaction aside. The record discloses a form of claimed intoxication under which Lapadat can remember and detail with minuteness everything about the negotiations, even to conversations. He remembers too much of what happened to have any credence placed in his claim that he did not know what he was doing. His claim of intoxication is evidently an afterthought and a poorly told one at that. Lapadat and Getia evidently thought there was a chance to speculate in real estate, and that their united income would permit them to handle the property contracted for, but Getia soon left the State and Lapadat found he could not manage the affair alone. We think Lapadat wanted his money back when Getia left and he found that he had bargained for more than he alone could pay out of his wages. Lapadat testified that he visited the salesman representing defendants and said to him:

"Listen here, I cannot keep the lots, I cannot pay. Pete (Getia) he draw his money from the bank and he

go home; I cannot keep these lots, if you give me them, all right."

The evidence does not disclose whether the prices fixed on the lots were too high. It might have been a poor investment but if it was that fact would not afford equity jurisdiction to cancel the same and, besides, Lapadat has not asked for cancellation on such a ground. It would benefit no one to expand this opinion with quotations from Lapadat's testimony. We are not impressed with his claimed peculiar form of intoxication.

The bill is dismissed, with costs to defendants.

CLARK, C. J., and McDONALD, MOORE, STEERE, and FELLOWS, JJ., concurred with WIEST, J. SHARPE, J., concurred in the result for the reason first stated. BIRD, J., did not sit.